Argued and submitted March 2, reversed and remanded December 14, 1988

FRANKLIN et ux,
*Respondents,*

*v.*

SPENCER et al,
*Defendants,*

HARBER et al,
*Appellants.*

HARBER et ux,
*Appellants,*

*v.*

FRANKLIN et ux,
*Respondents.*

(86-1253, 86-1288; CA A44858)

765 P2d 1241

D. Kevin Williams, Lincoln City, argued the cause for appellants Ted Harber and Karen Harber. On the brief were Frederick J. Ronnau, Lincoln City, J. Christopher Minor, and Minor, Beeson & Boone, Newport.

J. Christopher Minor, Newport, argued the cause for appellant Darrell Linzy. With him on the brief were Minor,

Beeson & Boone, Newport, and Frederick J. Ronnau, Lincoln City.

Guy B. Rencher, II, Corvallis, argued the cause and filed the brief for respondents.

Before Warden, Presiding Judge, and Graber, Judge, and Van Hoomissen, Judge pro tempore.

WARDEN, P. J.

## WARDEN, P. J.

Defendants Darrell Linzy and Ted and Karen Harber appeal from a judgment declaring their judgment liens on real property owned by plaintiffs invalid and enjoining the sheriff from selling the property on execution. The issue is whether redemption of real property by a mortgagor's grantee after a foreclosure sale revives judgment liens entered against the mortgagor before the sale to the grantee. The trial court held that the liens do not revive. We reverse.

In 1970, Loevitaur purchased real property from Robin and Margaret Walter and gave a purchase money mortgage as security. Loevitaur sold portions of the property to the Harbers and to Carl and Irene Drobnic, but the sales were judicially rescinded. As part of the rescission, the Harbers obtained two judgments against Loevitaur, one for $20,000 entered September 11, 1981, and one for $1,195.70, also entered in 1981, and the Drobnics obtained a judgment against Loevitaur for $10,000, entered August 20, 1982.[1] Linzy purchased the Drobnic judgment in April, 1986.

On December 1, 1981, after the three judgments were docketed, the Walters began foreclosure proceedings, naming Loevitaur and the Harbers, among others, as defendants; neither Walters nor Loevitaur is a party to the present action. A judgment foreclosing the mortgage was entered on February 18, 1985, and the property was sold at a sheriff's sale on April 5, 1985. After the sale, but during the redemption period, Loevitaur conveyed his interest in the property, including his redemption rights, to plaintiffs, the Franklins, who redeemed the property on April 4, 1986.[2] After the redemption, the Harbers executed on their judgment lien, maintaining that the redemption of the property had revived the lien. The Franklins brought this action for a declaration that both the Harber and Drobnic (Linzy) liens were invalid and for an injunction restraining the sheriff from proceeding with the execution sale. The trial court, relying on *Williams v. Wilson,* 42 Or 299,

---

[1] Despite some dispute between the parties about the actual date of the Drobnic judgment, plaintiffs acknowledged the August 20, 1982, date for purposes of trial.

[2] When the sheriff's sale in this case took place, ORS 25.560 permitted redemption within one year after the date of the sale. By Or Laws 1985, ch 760, § 2, the redemption period was shortened to 180 days. *See Director of Veterans' Affairs v. Peterson,* 94 Or App 314, 766 P2d 386 (1988).

70 P 1031 (1902), held that the judgment liens were not revived by redemption and enjoined the sale.

Plaintiffs argue that defendants' judgment liens against Loevitaur were extinguished when plaintiffs redeemed the property. They also argue that, even if redemption by a mortgagor would revive the lien of a judgment against the mortgagor, redemption by the mortgagor's grantee does not revive a judgment lien. We disagree with both arguments.

To understand the relevant law, it is important to keep in mind the distinction between mortgage liens and judgment liens. A mortgage lien arises by contract against a specific piece of real property. A judgment lien is statutory and arises when a judgment is docketed; it becomes a lien against all real property owned by the judgment debtor in the county where the judgment is docketed.[3]

ORS 23.530(1) provides, in part:

"Property sold subject to redemption, as provided in ORS 23.520, or any part thereof separately sold, may be redeemed by the following persons:

"(1) The mortgagor or judgment debtor whose right and title were sold, or the heir, devisee or grantee of the mortgagor or judgment debtor, who has acquired, by inheritance, devise, deed, sale, or by virtue of any execution or by any other means, the legal title to the whole or any part of the property separately sold; *provided, that in the event redemption is made by anyone acquiring the legal title after * * * a judgment becomes a lien on the property, such person shall acquire no greater or better right thereby to the property so redeemed than the holder of the legal title at the time of such * * * judgment."* (Emphasis supplied.)[4]

_____

[3] ORS 18.350(1) provides:

"From the time of docketing an original or renewed judgment, as provided in ORS 18.320, such judgment shall be a lien upon all the real property of the judgment debtor within the county where the same is docketed, or which the judgment debtor may afterwards acquire therein, during the time prescribed in ORS 18.360."

[4] ORS 23.530 is *former* OCLA § 6-1602. The legislature originally adopted what is now ORS 23.530(1) in 1917, in response to *Higgs v. McDuffie,* 81 Or 256, 157 P 794, 158 P 953 (1916), in which the Supreme Court held that a grantee could not redeem from a foreclosure sale. Or Laws 1917, ch 352, § 1; *see Ulrich v. Lincoln Realty Co.,* 180 Or 380, 168 P2d 582, 175 P2d 149 (1947). The 1917 amendment made explicit that a grantee could redeem and added the language now in ORS 23.530(1).

The statute explicitly states that a grantee who redeems can obtain no greater title on redemption than the vendor had at the time of sale. We agree with defendants that the 1917 legislature's probable intent was to impose limits on redemptioners' rights so that the newly established right of a grantee to redeem would not allow the grantee to take a greater title than the grantor had. When Loevitaur sold his redemption rights to plaintiffs, defendants' judgments against Loevitaur had been docketed and were liens against the property. ORS 18.350.

Plaintiffs contend that *Ulrich v. Lincoln Realty Co., supra* n 4, supports the proposition that judgment liens are extinguished by redemption. In *Ulrich,* the court applied the portion of OCLA § 6-1602, that stated that a redemptioner who acquired legal title "after the institution of a suit to foreclose a mortgage lien" could acquire no greater or better title than the legal title holder at the time of the "institution of such suit."[5] In its first opinion, the court held that a grantee of mortgaged property who acquired title from the mortgagor after commencement of an action to foreclose the mortgage and who redeemed from the sale on execution took the property subject to any deficiency judgment taken in the foreclosure proceedings and that the lien of the deficiency judgment dated back to the execution of the mortgage for purposes of priority. On rehearing, the court changed its decision and held that the lien of a judgment taken against the mortgagor after the commencement of the action to foreclose but before the judgment of foreclosure had priority over any lien from a deficiency judgment from the foreclosure.[6]

Plaintiffs and the trial court rely on *Williams v. Wilson, supra,* which holds that a judgment creditor who is joined in a foreclosure action cannot subsequently enforce the pre-existing judgment by execution on the same property if it is redeemed by someone other than the judgment debtor. The continuing validity of *Williams* is seriously weakened by later

---

[5] The quoted language of this provision was dropped in the codification of Oregon Revised Statutes in 1953.

[6] In *Foster v. Goss,* 180 Or 405, 168 P2d 589, 175 P2d 794 (1947), a companion case to *Ulrich v. Lincoln Realty Co., supra,* the court affirmed the trial court in sustaining a demurrer to the complaint of the deficiency judgment holder, seeking a declaration that the deficiency judgment was a lien against the real property.

cases holding that judgment liens revive after redemption from a foreclosure sale. *See, e.g., Kaston v. Storey,* 47 Or 150, 80 P 217 (1905). *Williams,* even if it is still good law, is not applicable to the Drobnic (Linzy) judgment, because it was obtained after the foreclosure sale and the judgment creditors were not parties in the foreclosure action.

Plaintiffs contend that *Call v. Jeremiah,* 246 Or 568, 425 P2d 502 (1967), also supports their position that the judgment liens were cut off by the foreclosure sale. In *Call,* the Supreme Court held that a foreclosure decree cuts off the mortgage lien of a junior mortgagee who was made a party to the foreclosure action. *Call* addresses mortgage liens, not judgment liens. The court explicitly stated that, although a foreclosure decree cuts off mortgage liens, a judgment lien "continues to encumber the property during the redemption period and a grantee of the debtor takes subject to the encumbrance." 246 Or at 582. In summary, neither *Williams v. Wilson, supra,* nor more recent cases are conclusive on the issue of whether judgment liens revive on redemption from a foreclosure sale.

Plaintiffs also argue that, even if the judgment liens would revive if the mortgagor redeemed the property, the mortgagor's *grantee* takes free of such liens, citing *Call v. Jeremiah, supra.* In *Call,* the court held that a grantee who redeemed took free of a pre-existing junior mortgage lien which had not been reduced to judgment before redemption, whereas the mortgagor would have redeemed the property encumbered by the junior mortgage. The holding, however, is limited to its facts.[7] In effect, *Call* holds only that, when the mortgagor does not hold legal title at the time a judgment

---

[7] In *Call v. Jeremiah, supra,* the court explicitly reconciled its holding with *Flanders v. Aumack,* 32 Or 19, 51 P 447 (1897), in which it had held that no distinction existed between redemption by a mortgagor and by a grantee, by stating:

"It is further contended that the decision in *Flanders* is inimical to the distinction between redemption by the mortgagor and redemption by the grantee of the mortgagor. Sole reliance is placed upon the language of the Court that 'upon principle, it is difficult to see wherein the rights of a successor in interest redeeming are to be distinguished from those of the judgment debtor himself.' This is certainly true where, as in *Flanders,* the judgment lien for the deficiency has attached prior to the conveyance by the judgment debtor. But this is not applicable to a case, such as the one before us, where the decree cutting off the mortgage lien intervenes between the conveyance by the mortgagor and the redemption by the grantee." 246 Or at 583. (Citations omitted.)

against the property is entered, the lien never attaches to the property.

More importantly, ORS 23.530 makes no distinction between redemption by a mortgagor and redemption by the mortgagor's grantee. It explicitly states that, "in the event redemption is made by *anyone* acquiring the legal title * * * after a judgment becomes a lien on the property, *such person* shall acquire no greater or better right thereby * * * than the holder of the legal title at the time of such * * * judgment." (Emphasis supplied.) Under ORS 23.530, plaintiffs, the grantees, can obtain no greater rights on redemption than Loevitaur, their grantor, could have obtained.

We hold that, under ORS 23.530(1), a grantee of a mortgagor who redeems from a foreclosure sale takes the property subject to any judgment liens against the mortgagor that had attached to the property before the grantee's purchase. The trial court therefore erred by declaring the liens invalid and enjoining the execution sale.

Reversed and remanded.